**Hattie M. BLUNT, Plaintiff,**

v.

**MARION COUNTY SCHOOL BOARD,**
**a body corporate, et al.,**
**Defendants.**

No. 71–35–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

Nov. 20, 1973.

**728**

John F. Welch, Ocala, Fla., for plaintiff.

John P. McKeever, Ocala, Fla., for Marion County School Board.

Herbert D. Sikes, State Board of Education, Tallahassee, Fla., for remaining defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

REED, District Judge.

This cause was tried before the Court on 14 November 1973. The parties had waived trial by jury. The plaintiff, Hattie M. Blunt, a school teacher formerly employed by the defendant Marion County School Board, brought this action under 42 U.S.C. § 1983 charging that her dismissal as a teacher by said defendant violated rights secured to her by the United States Constitution. Although not clearly framed by the pleadings, the following issues were tried by the consent of the parties:

(1) Whether or not the plaintiff was discharged by the defendant Marion County School Board as a result of its efforts to desegregate school faculties, and particularly the faculty at Fessenden School where Mrs. Blunt had been employed;

(2) Whether or not the grounds for Mrs. Blunt's dismissal were arbitrary and capricious and thus resulted in a discharge in violation of plaintiff's right to substantive due process; and

(3) Whether or not the review procedure employed by the defendant State Department of Education in respect to Mrs. Blunt's administrative appeal denied her procedural due process of law.

After hearing testimony presented by the parties and considering all the evidence in the cause, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The plaintiff Hattie M. Blunt is a member of the Negro race. She was employed by the Marion County School Board as a teacher at the Fessenden School until the time of her discharge which took effect at the close of the 1968-1969 school year. Prior to her discharge, Mrs. Blunt had been a teacher for twenty-five years. She came to the

Fessenden School in 1953 and taught the second grade at that school since the school year 1957-1958.

2. Mr. Eugene Broxton is the Principal at Fessenden School and has been such since 1963.

3. From the beginning of her tenure at Fessenden School through the school year 1968-1969, the plaintiff received satisfactory evaluations as a teacher. The evaluations were normally made in the spring of each school year. Mr. Broxton made these evaluations beginning with the school year 1963-1964.

4. Mr. Broxton testified that as early as 1963, he considered the plaintiff to be incompetent as a teacher, but nevertheless continued to accord her satisfactory evaluations until the fall of 1968. He explained the seeming inconsistency by stating that his evaluations were based on his assessment of the plaintiff's performance as compared to her ability. It was his belief that the plaintiff was performing as well as her abilities would permit. He testified, however, that he felt that the plaintiff did not meet the educational needs "of our kids."

5. In September or October of 1968, Mr. Broxton became increasingly concerned about the quality of the plaintiff's performance as a second grade teacher. In October of 1968, Mr. Broxton asked Mrs. Margaret S. Cody, the Assistant Principal at Fessenden School, to make periodic visits to Mrs. Blunt's classroom for the purpose of observing her classroom techniques and teaching ability. Mr. Broxton also asked Mrs. Marie Keeney to visit Mrs. Blunt's classroom for the same purpose and to assist Mrs. Blunt if possible. Mrs. Keeney at the time was the Supervisor of Elementary Education and the Coordinator of kindergarten and grades one and two for the entire County school system.

6. The Court finds that Mr. Broxton, in the institution of these efforts to evaluate Mrs. Blunt's performance, was acting with a genuine concern about the quality of Mrs. Blunt's teaching and with the intent to assist Mrs. Blunt in improving her performance as a teacher or, failing that, to secure sufficient evidence upon which to base a recommendation that Mrs. Blunt be dismissed as a teacher in the Marion County school system. Mr. Broxton gave Mrs. Blunt specific notice in writing of the reasons for his concern and his intentions with respect to her. See letters of 12 November 1968 and 5 December 1968 from Mr. Broxton to plaintiff. (Joint Exhibit 2).

7. In the spring of 1968, Mr. Broxton was advised by Mr. Robert Dunwoody, the Superintendent of the Marion County school system, that all public schools in the County were required to work toward desegregated faculties and the establishment of a two to one ratio of white to black teachers in the entire County school system. At the time this policy was announced by Mr. Dunwoody, two out of fifty-one teachers at Fessenden School were white. The directive from Mr. Dunwoody was based on "guidelines" given him by the United States Department of Health, Education and Welfare. In an effort to comply, Mr. Broxton in the spring of 1968 asked all teachers at Fessenden to attempt to find positions in other schools where the faculties had theretofore been predominantly white. Mr. Broxton testified that as the teachers returned to him and reported that they secured positions elsewhere, he would only then seek to fill the vacancies at Fessenden thereby created. Mrs. Blunt made no substantial effort to secure a position in any other school despite Mr. Broxton's request. She nevertheless was retained at Fessenden for the school year 1968-1969, at which time the ratio of white to black teachers was one to one. Mr. Broxton testified that Mrs. Blunt's lack of cooperation with respect to his desire to implement the faculty desegregation was taken into account by him in his evaluation of her in 1969, but he testified that she was not discharged because of this attitude. He testified and the Court finds that her discharge was not designed to create a vacancy which would permit the further implementation of

the plan to desegregate the faculty at Fessenden and the other public schools in the Marion County school system. Mr. Dunwoody corroborated Mr. Broxton's testimony on this point. Mr. Dunwoody testified that he was committed to the principle that no teacher should be discharged in order to achieve the ratio set by the Department of Health, Education and Welfare. Additionally Mr. Al Appleby who in the spring of 1968 was the Assistant Superintendent of Instruction for the Marion County school system and, in that capacity, primarily responsible for faculty desegregation, corroborated both Messrs. Broxton and Dunwoody's testimony.

█ 8. The Court finds as a matter of fact that the testimony of Messrs. Broxton, Dunwoody and Appleby is worthy of credit and concludes as a matter of fact that the action of the Marion County School Board in terminating Mrs. Blunt's contract of continuing employment, as well as the action taken by Mr. Broxton which led to the action of the Marion County School Board, was not taken for the purpose of achieving faculty desegregation, but was taken solely because of a conviction on the part of Mr. Broxton and the members of the Marion County School Board that the plaintiff was not competent to meet the modern demands of teaching.

9. The Court has not overlooked the testimony by Mrs. Blunt and Mr. Broxton that Mrs. Blunt had been, until the time her contract was terminated, a faithful employee in the school system for approximately twenty-five years and had until such time never received an unfavorable evaluation. There is also testimony from Mrs. Blunt to the effect that her teaching methods have not substantially changed over this period of twenty-five years. The Court does not infer from these facts that there was some unstated racially discriminatory or otherwise impermissible reason for Mrs. Blunt's termination. The Court finds the only reasons for her dismissal were those stated by the Superintendent of Schools, Mr. Robert M. Dunwoody, in

his letter of March 25, 1969 addressed to the Marion County Board of Public Instruction wherein he wrote:

"Mrs. Blunt has exhibited inadequate knowledge of subject matter. She has not exhibited good teaching practices in the conduct of her classes. As a direct result of poor planning and poor organization, student motivation has been poor. Her management of students and class discipline has not met acceptable standards."

The Court simply concludes from the aforementioned evidence that Mrs. Blunt was in fact incompetent prior to 1968 and possibly as early as 1963, the year testified to by Mr. Broxton. The Court also concludes from such evidence that the standards of competency required by the Marion County School Board and administrative personnel employed in the school system have changed in respect to qualifications and presently require a higher degree of skill and ability than at times past.

10. In late winter or early spring of 1969, Mr. Broxton determined that Mrs. Blunt's performance would not be improved through the assistance of supervisory personnel and, accordingly, recommended to Robert M. Dunwoody, the Superintendent of Schools for Marion County, that Mrs. Blunt's continuing contract as a teacher be terminated. As a result, on 25 March 1969, Mr. Dunwoody wrote a letter to the Marion County Board of Public Instruction recommending in accordance with Florida Statutes § 231.36(4) that the continuing contract of Mrs. Blunt be terminated. The grounds for the termination were specified in the letter and a copy of the letter was provided to Mrs. Blunt on or about 26 March 1969. A copy of this letter dated 25 March 1969 may be found in Joint Exhibit 2. On or about May 2, 1969 another notice of the charges was provided to Mrs. Blunt's attorney by mail. See Joint Exhibit 4. The Court finds that the statement of the charges contained in the letter of 25 March 1969 of necessity identified for

Mrs. Blunt the witnesses who would testify and the nature of their contentions.

11. With respect to the charges concerning Mrs. Blunt, on 7 May 1969 a hearing was held before the Marion County School Board. Mrs. Blunt was represented by an attorney. Witnesses were called, sworn and examined. Mrs. Blunt testified in her own behalf and was afforded an opportunity to cross-examine the other witnesses. The testimony was recorded and is in evidence before this Court as a part of Joint Exhibit 2. At the conclusion of the hearing, the School Board voted unanimously to terminate the continuing contract of Mrs. Blunt.

12. In accordance with Florida Statutes, § 231.36(4) F.S.A., Mrs. Blunt perfected an appeal of the decision to the State Department of Education which, under Florida law, consists of the Governor and his Cabinet and staff personnel (Art. 9 § 2, Fla.Const., F.S.A., 1968; F.S.1969, § 229.75, F.S.A.). The State Department of Education appointed a hearing examiner—the reason for which is not entirely clear since the State Department of Education's function under F.S. § 231.36(4) F.S.A. is that of an appellate tribunal, not that of a trier of fact. On 16 March 1971 the State Department of Education affirmed the decision of the Marion County School Board. (See Joint Exhibit 2) On 2 November 1971, approximately seven months later, Mrs. Blunt, through her attorney, filed a petition with the State Department of Education for a rehearing. The rehearing was granted, and the State Department of Education on 11 January 1972 reversed its initial decision and ordered the reinstatement of Mrs. Blunt with back pay. On 20 January 1972, the Marion County School Board filed a petition with the State Department of Education for another rehearing. On 25 January 1972, the State Department of Education, on its own motion, decided to rehear the matter and subsequently heard arguments by the attorney for Mrs. Blunt and the Marion County School Board. Thereafter, the State Department of Education again reversed itself and affirmed the decision of the Marion County School Board. (See Minutes of State Department of Education of 7 March 1972—Joint Exhibit 2). Between the first and second rehearings, the record before the State Department of Education was supplemented with certain documents which had been presented to the Marion County School Board at the evidentiary hearing on 7 May 1969. These documents had not theretofore been included in the record brought to the State Department of Education for review.

13. The Court finds that the evidence does not disclose that any improper influences were brought to bear on the State Department of Education at any time with respect to this case.

14. The last decision of the State Department of Education was reviewed on certiorari by the First District Court of Appeal for the State of Florida. That Court issued an opinion approving the action of the Marion County School Board and the State Department of Education. See Blunt v. The State Board of Education and the Marion County School Board, Fla.App.1973, 275 So.2d 303.

## CONCLUSIONS OF LAW

15. Under 28 U.S.C. § 1343 the Court has jurisdiction of this cause.

16. Because the plaintiff was not dismissed as a result of efforts made by the Marion County School Board or by the Fessenden School to desegregate faculties, the Marion County School Board was not obligated to apply the principles of Part VIII of the opinion in United States v. Jefferson County Board of Education (C.A.5, 1967), 380 F.2d 385, 394, cert. denied, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103. Those principles have no application to a case such as this where the dismissal is based solely upon the teacher's lack of competency and is not a part of plan to achieve faculty desegregation. See Lee v. Macon County Board of Education, C.A. 5,

1972, 456 F.2d 1371. The Court concludes as a matter of law that the plaintiff's claim that her dismissal violated the principles of the *Jefferson* opinion is without merit.

■ 17. Because the plaintiff held a continuing contract with the Marion County Board of Education, the procedure provided by Florida law in Section 231.36(4), F.S.A., was applicable to the proceeding before the Marion County School Board to terminate such contract and effect the plaintiff's dismissal. There is no contention by the plaintiff that the procedure before the Marion County School Board did not comply with the procedure specified in F.S. § 231.36(4) F.S.A. Nor is there any contention that the procedure before the Marion County School Board denied the plaintiff procedural due process. Nevertheless, this Court concludes that the steps outlined in Ferguson v. Thomas, C.A. 5, 1970, 430 F.2d 852, 856, as essential to assure procedural due process, were substantially accomplished in connection with the proceedings before the school board.

■ 18. Although the amended complaint did not clearly raise the issue, the plaintiff contended at the trial before this Court that her dismissal was arbitrary and capricious in the constitutional sense and, therefore, amounted to a denial of substantive due process. The Court has concluded as a matter of fact that the only reasons for the plaintiff's dismissal were those submitted to the school board as mentioned in paragraph 9 above. The Court concludes as a matter of law that the stated grounds for the dismissal action were neither arbitrary nor capricious or otherwise constitutionally impermissible. Ferguson v. Thomas, *supra*; Drown v. Portsmouth School District, C.A. 1, 1971, 451 F.2d 1106; Cf., Robinson v. Jefferson County Board of Education et al., C.A.5, 1973, 485 F.2d 1381.

■ 19. As a further step in determining whether or not the termination of plaintiff's contract with the Marion County School Board was arbitrary or capricious or for any unstated and otherwise improper reason, the Court has examined the record of the evidence which was before the Marion County School Board, in accordance with the dictates of Ferguson v. Thomas, *supra*. The Court finds in such record competent substantial evidence to support the stated grounds for termination which were proposed to the school board and tried in the 7 May 1969 evidentiary proceeding before the Marion County School Board. Where this court is called upon to evaluate the sufficiency of evidence on the basis of which a local school board acted, this Court should obviously be hesitant to overturn the conclusion of the local agency charged by state law with the responsibility for initially evaluating the facts, unless the evidentiary basis for the action taken is clearly deficient. Drown v. Portsmouth School District, *supra*. This principle is particularly apposite to the present case because, not only did the Marion County School Board evaluate the evidence and find the same qualitatively sufficient, but so too did the State Department of Education, and the Florida First District Court of Appeal on certiorari.

■ 20. The plaintiff contends that the granting of the second rehearing by the State Department of Education was violative of the plaintiff's right to procedural due process of law. The rehearing violated no statute which the Court has been able to find and, aside from the fact that the ultimate decision on the rehearing went against the plaintiff, there was no prejudice to the plaintiff in the granting of the second rehearing. The Court has found as a matter of fact that no improper influence motivated the Department of Education in granting the second rehearing and, therefore, the second rehearing did not deny the plaintiff substantive due process of law. Furthermore, it appears to the Court that the plaintiff is taking a somewhat inconsistent position in asserting that the second rehearing was illegal where

the plaintiff herself, some seven and one-half months after the initial decision by the Department of Education, petitioned the Department of Education for a rehearing and successfully secured the first rehearing.

21. For each of the foregoing reasons and on the basis of the foregoing findings of fact, the Court concludes that the plaintiff has failed to sustain the essential allegations in her complaint and has failed to demonstrate a claim upon which relief may be granted.

### FINAL JUDGMENT

It is, therefore,

Ordered and adjudged that the above cause be and the same is hereby dismissed with prejudice and the defendants go hence without day, each party bearing his own costs.